METROPOLITAN LIFE INSURANCE COMPANY *v.* BONNER.

4-5040

Opinion delivered April 25, 1938.

*Daily & Woods,* for appellant.

*Sullins & Sullins* and *Carlos B. Hill,* for appellee.

SMITH, J. Appellee was employed by appellant to solicit insurance of various kinds and to collect and remit the premiums therefor. As a condition of his em-

ployment appellee was required to make a cash bond in the sum of $250, which amount was deposited with appellant under a written agreement to the effect that appellant should deduct from this deposit any collection which appellee might make and fail to account for. Appellee was discharged for the alleged reason that he had failed to make remittances of all collections which he had made. He denied that he was short in his accounts, and insists that there was no competent evidence to the contrary.

Appellee was discharged from his employment about April 7, 1937, and on July 26, 1937, he commenced this suit to recover the $250 deposited as a bond. He sued also for a weekly salary of $9.53 for the year beginning February 20, 1937, but the court instructed the jury there could be no recovery on that account, and this question passed out of the case.

The testimony appears to be undisputed that appellee collected $244.82 which he did not remit. He was required by the terms of his agency to make remittance of collections to the Fort Smith office, where they passed through the hands of L. N. McAfee, who was the district manager of appellant in charge of the Fort Smith office. McAfee testified that entries of these remittances were made upon the books of the company in the Fort Smith office under his direct supervision and control. The court refused to permit McAfee to testify what remittances were shown by these books. He had memoranda from these books which the court refused to admit in evidence. We think this was error.

But aside from this testimony, J. S. Glenn, who was field inspector and auditor for appellant, testified as to the audit made of the items comprising the alleged shortage. More than a week was devoted to the audit, and during the major portion of that time appellee accompanied Glenn on the visits to the policyholders. Receipt books had been issued to the policyholders, and when appellee made collections he made notations of the amount collected upon the policyholders' premium receipt books. Glenn testified that these receipts were compared with the remittance reports which appellee had made, and the difference represents the shortage claimed, and that he

made in appellee's presence an enumeration of all the discrepancies found, none of which were disputed. Appellee did not deny the truth of this testimony. It appears, therefore, that there is no dispute as to the shortage except as to a check for $34.15 for which appellee claimed credit. This check was drawn by G. A. Broyles, a policyholder in the appellant company, on the First National Bank of Fayettteville, Arkansas, and was paid October 7, 1936, upon the following indorsement: "Met. Life Ins. Co. J. G. Bonner, Agt." It is insisted that appellee deposited this check in the Fayetteville bank to the credit of appellant, and that only appellant could have withdrawn or checked against the deposit. There appears to be no testimony to support this contention. There is no testimony that appellant carried an account with the Fayetteville bank; on the contrary, the account was carried in Fort Smith. The indorsement shows that the check was paid to appellee upon his indorsement thereof as appellant's agent.

The check was offered in evidence by appellant, whose attorney, in introducing it, said: "I merely want to show he (appellee) indorsed the check and got the money on it." Appellee was asked: "Is that your signature on the back?" and he answered: "I believe I heard you say I indorsed and received the money. Yes, that is my signature." The witness does not appear to have denied that he did receive the money on the check. Broyles issued the check in payment of two items. One was for $20.26 as payment of premium; the other was for $13.89 interest on a policy loan. These items were separately noted by Broyles on the check, and he testified that subsequent to the delivery of the check to appellee he had a conversation with appellee relative to the check, during which he inquired of appellee why he had not received a receipt for the interest payment, and appellee admitted that he had not remitted the $13.89 to appellant. Appellee did not deny this testimony. Of course, if the check (which was for a single amount and covered not only the interest, but the premium also) had, in fact, been deposited in the Fayetteville bank to appellant's credit, this would have been a remittance to appellant of that interest as

well as payment of the premium. There appears, therefore, no reason why appellee's right to this credit should have been submitted to the jury, as clearly he was not entitled to it.

Appellant admitted in its answer that it should be charged as follows: Cash bond, $250; interest on bond, $2.79; accrued commissions, $25.54, less 25 cents federal old age tax, $25.29. These three items total $278.08. The testimony above recited shows without dispute that this item of $278.08 should be credited with a shortage amounting to $244.82. This leaves a balance due appellee of $33.26.

The jury was directed to return a verdict in appellee's favor for the $33.26 independently of the other items in controversy. This also appears to be error for the reason that prior to the commencement of this suit appellant mailed to and appellee received a check for the $33.26. Appellee did not cash this check and has it now in his possession. No doubt it will be paid when presented for payment. Appellant was, therefore, not indebted to appellee in any sum when this suit was brought and a verdict should have been directed in its favor. The judgment will, therefore, be reversed, and the cause dismissed, without prejudice, however, to appellee's right to collect the check for $33.26.